**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

ERICK P. TOLLEN,           )
                                )
                Plaintiff,     )
                                )
v.                                )     CASE NO. 11-CV-1182-JWL-GLR
                                )
                                )
CITY OF EL DORADO, KAN.,    )
                                )
                Defendant.  )
_____ )

**COMPLAINT**

COMES NOW Plaintiff Erick P. Tollen, and for his causes of action, alleges and states:

**I.  PARTIES**

1.      Plaintiff Erick P. Tollen is a citizen of the United States and a resident of Oklahoma.

2.      Defendant City of El Dorado, Kansas, is an incorporated municipality with home rule power under the Constitution of the state of Kansas.  The City of El Dorado may be served with legal process through its City Clerk: Tabitha Sharp, City of El Dorado, 220 East First Street, El Dorado, Kansas 67042.

**II.  JURISDICTION**

3.      This action is brought for relief under the Americans with Disabilities Act as amended,  42 U.S.C. § 12101 *et seq.* ("ADA"), and under Kansas common law.

1

5.     Jurisdiction and venue are appropriate in this Court pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343 and 28 U.S.C. § 1391(b) because a federal question is involved and unlawful employment practices were committed within the District of Kansas.  Further, supplemental jurisdiction over Plaintiff's pendent state law claim is proper in this Court pursuant to 28 U.S.C. §1367.

### III.  ADMINISTRATIVE PROCEDURES

6.     Within six months of the occurrence of the acts of which he complains, Plaintiff filed a charge of employment discrimination under the ADA with the Equal Employment Opportunity Commission ("EEOC") against Defendant City of El Dorado. [EEOC Charge No. 563-2010-00221].

7.     Plaintiff exhausted his federal administrative remedies, and on June 16, 2011,  the EEOC issued a "Notice of Right to Sue."

8.     Plaintiff filed the instant suit within 90 days after receipt of his EEOC notice.

9.     Plaintiff exhausted his state law administrative remedies by filing a Kansas Tort Claims Act Written Notice with the City Clerk of the City of El Dorado on November 8, 2010.

### IV.  FACTS

10.    Plaintiff was employed by the City of El Dorado, Kansas, from April 1, 2009, to August 25, 2010, as a journeyman electrician.

2

11.     From the beginning of Plaintiff's employment and until approximately June 1, 1010, Plaintiff's immediate supervisor was Gary Taylor, Water Distribution Superintendent, who reported to Kurt Bookout, Public Utilities Director.

12.     On or about May 4, 2010, during Plaintiff's work hours, Taylor instructed Plaintiff to go by Taylor's home to determine how much electrical wire Taylor would need to provide electrical service to the garage Taylor was building.  While at the property, Plaintiff observed that the garage floor had been freshly poured, appearing to be one or two days old.  Plaintiff told Taylor that he would need approximately 200 - 250 feet of 3 conductor, #2 awg. wire.  Taylor told Plaintiff to "order the wire with the 'East Park' wire."  At the time, Plaintiff was working on two major electrical and lighting projects at the City of El Dorado's "East Park" and "McDonald's Stadium."

13.     On May 6, 2010, Plaintiff placed the order for Taylor's wire with Robert Berri, who was employed by Star Electric.

14.     One or two days later, Plaintiff was in Taylor's office handing in Purchase Orders.  Taylor told Plaintiff that he was going to write his garage wire off on the East Park project.  The cost of the 250 feet of wire ordered was about $5.95 per foot, for a total cost of $1,487.50.  Plaintiff put his hands in the air and told Taylor, "I don't want to know about any of that kind of crap!"

15.     On or about May 10 - 11, 2010, Taylor gave to Plaintiff approximately 75 feet of used # 4 stranded wire, approximately 250 feet of used # 8 stranded wire, and some # 6 stripped copper with a value of approximately $100.00.  The value of the stranded wire was about $1.17 per foot, for a total approximate value of all of the wire of $365.00.  Taylor told Plaintiff that the wire was to compensate for the wire ordered for

3

Taylor's garage.  That night, Plaintiff told his wife and his mother about the situation.
Plaintiff feared that he would be committing a crime to order the wire as instructed and,
in the end, Plaintiff feared that he would be blamed.

16.     A few days later, Taylor told Plaintiff that he was not going to get the wire
until John Scanlon, Recreation & Parks Director, approved the purchase order.

17.     Thereafter, Plaintiff went to Herb Llewellyn, City Manager, to report the
situation.  Mr. Llewellyn told Plaintiff that his secretary would catch it if there was a
problem.  After Plaintiff talked to Mr. Llewellyn about the matter, Kurt Bookout called
Plaintiff on the telephone.  Mr. Bookout was angry with Plaintiff because Plaintiff "went
over his head."

18.     On or about May 13 - 14, 2010, Plaintiff's mother called him on his cell
phone while Plaintiff was at Big A Wholesale Electric Supply.  Randy Thomas, the
owner of Big A Wholesale, overheard Plaintiff's conversation about the wire situation
and told Plaintiff that he should report the matter to Jan Satterfield, County Attorney.
Ms. Satterfield told Plaintiff to report the matter to Tom Boren, Chief of Police.

19.     On May 26, 2010, Plaintiff reported the matter to Chief Boren who
assigned Det. Sgt. Chad Young to investigate the matter.

20.     After Plaintiff reported the matter to the City, Mr. Bookout assigned Brett
Perry, Water / Sewer Treatment Superintendent, to be Plaintiff's supervisor.  Mr.
Bookout told Plaintiff that there was nothing they [the City] could do to Gary [Taylor],
because Taylor had paid for the wire.

21.     After Plaintiff reported Taylor's conduct to the Chief of Police, Brett Perry
instructed Plaintiff that he needed to get a Commercial Driver's License (CDL) to

4

operate the large boom truck the City had recently purchased.  A CDL was not an essential job requirement for the journeyman electrician position in which Plaintiff was employed.  Plaintiff briefly discussed the matter with Perry and told him that Plaintiff couldn't drive a big truck and briefly explained why.

22.     During the remainder of Plaintiff's employment, Bookout and Perry pushed Plaintiff to complete the electrical projects at McDonald's Stadium and East Park, because of sporting events which were currently scheduled.  Plaintiff was the only employee of the City of El Dorado who was licensed to perform the electrical work on the projects.  Throughout the summer as Plaintiff was working on the projects, Perry made no further mention of the CDL.

23.     On August 25, 2010, after the East Park and McDonald's Stadium projects were substantially complete, Kurt Bookout directed  Plaintiff to get a CDL. Plaintiff told him that he could not obtain a CDL due to injuries he have received in a previous motor vehicle accident, which he explained to Mr. Bookout.  In addition, a CDL was not a requirement for Plaintiff's position.  Plaintiff told Mr. Bookout that there were several people employed by the City that already had CDLs, if in fact, one might be needed from time to time.  At that time, Mr. Bookout presented Plaintiff with a hand written prepared letter of resignation he had prepared for Plaintiff to sign.  When Plaintiff refused to sign the resignation, Bookout fired Plaintiff.

24.     In 2006, prior to Plaintiff's employment with the City of El Dorado, Kansas, Plaintiff was involved in a motor vehicle accident involving a large truck, from which Plaintiff escaped death, suffered severe head trauma and currently suffers from post-

5

traumatic stress disorder (PTSD), in that Plaintiff has a severe phobia about operating a large truck.

25.     As a result of PTSD, Plaintiff is an individual with a mental impairment that substantially limits one or more of Plaintiff's major life activities, including but not limited to, thinking and reacting, affecting Plaintiff's ability to operate some equipment, speaking and sleeping, and Plaintiff has a record of such an impairment.

26.     The City of El Dorado refused to reasonably accommodate Plaintiff's disability, for reasons unrelated to the disability or the accommodation requested.  The reasonable accommodation that Plaintiff requested was to have his assistant obtain the CDL, or in the alternative, on the rare instance that it was needed, to have another City employee with a CDL drive the large boom truck.

27.     On May 31, 2010, within seven days of his termination, Plaintiff gave a written grievance letter to the City Clerk.

28.     Section 10 of the City's employment rules, regulations and policies provided for a grievance and hearing procedure before the City Manager.  The City Manager did not conduct a hearing as provided.

29.     It is reasonably believed that Gary Taylor is still employed by the City of El Dorado.

## V.  CAUSES OF ACTION

**Count 1:       Failure to Reasonably Accommodate in Violation of the ADA**

30.     Plaintiff incorporates paragraphs 1 through 29 of this complaint.

31.     Defendant and/or its managers and agents had knowledge of Plaintiff's injuries from a motor vehicle accident and of Plaintiff's phobia of driving a large truck.

32.     To accommodate his disability, Plaintiff requested that Defendant require his assistant to obtain a CDL or, on the infrequent basis that the large boom truck was needed, to have a City employee who already had a CDL drive the equipment.

33.     Defendant refused the requested reasonable accommodation and fired Plaintiff.

34.     Plaintiff suffered damages and is entitled to an award of damages for back pay, injunctive relief or front pay, compensatory damages including damages for future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff Erick P. Tollen, prays for judgment against Defendant City of El Dorado, Kansas, for actual economic damages in an undetermined amount, for non-economic damages in the statutory amount, for his attorney fees and costs, and for such other and further relief as the Court deems just and equitable.

**Count 2:      Retaliatory Discharge / Whistleblowing**

35.     Plaintiff incorporates by reference paragraphs 1 through 34 of this Petition.

36.     Defendant discharged Plaintiff from employment in retaliation for the good-faith reporting of a serious infraction of rules, regulations, or the law pertaining to public health and safety and the general welfare by a coworker to either the management of the City of El Dorado or to law enforcement officials. *See, Shaw v. Southwest Kan. Groundwater Mgt. Dist. 3,* 42 Kan. App. 2d 994 (2009).

7

37.     As a result thereof, Moore has suffered economic and noneconomic damages.

WHEREFORE, Plaintiff Erick P. Tollen, prays for damages against Defendant City of El Dorado, Kansas, for actual and compensatory damages in excess of $75,000, for his costs, and for such other and further relief as the Court deems just and equitable.

Respectfully submitted,

AYESH LAW OFFICES

By:/s/ Ray E. Simmons_____
    Ray E. Simmons, #12296
    Mark G. Ayesh, #10175
    8100 East 22nd Street North
    Building 2300, Suite 2
    P. O. Box 781750
    Wichita, KS   67278-1750
    Telephone:  316-682-7381
       *Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests that the issues in this matter be heard by a jury.

## DESIGNATION OF TRIAL

Plaintiff designates Wichita, Kansas as the location for the trial in this matter.

By: /s/ Ray E. Simmons_____
    Ray E. Simmons, #12296
    Mark G. Ayesh, #10175
       *Attorneys for Plaintiff*

8